El Pueblo de Puerto Rico, demandante y apelante, *v.* Rogelio Capestany, Miguel Bernard Silva y Francisco Moll Ferrer, acusados y apelados.

No. 3149.—*Visto:* Mayo 3, 1927. *Resuelto:* Enero 12, 1928.

Derecho Penal—Limitación de los Procesos—Computación de la Prescripción.—El término dentro del cual deben ejercitarse las acciones penales por delitos graves fuera de asesinato, malversación de fondos o falsificación de documentos públicos, empieza a contarse desde la fecha en que se decreta el arresto del acusado, o en su defecto, desde la fecha en que se presenta la acusación.

Resolución de *R. López Antongiorgi,* J. (Guayama), sobre excepción previa de prescripción declarando ésta con lugar y ordenando el archivo y sobreseimiento de la causa. *Revocada* y devuelto el caso.

*José E. Figueras,* abogado de *El Pueblo,* apelante; *Manuel A. Martínez Dávila* y *A. Porrata Doria,* abogados de los apelados.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Está envuelta en este caso la interpretación del art. 78 del Código Penal a los efectos de la computación del período de tres años dentro del cual puede ejercitarse la acción penal por cualquier delito grave fuera de asesinato, malversación de caudales públicos o falsificación de documentos públicos.

El 25 de octubre de 1926 se archivó en la Corte de Distrito de Guayama una acusación por el Gran Jurado contra Rogelio Capestany, Miguel Bernard Silva y Francisco Moll Ferrer, imputándoles la comisión de un delito de soborno perpetrado el 17 de octubre de 1923.

Los acusados formularon varias excepciones previas, entre ellas la de prescripción basándose en lo dispuesto en el art. 78 del Código Penal.

La corte se limitó a considerar la excepción de prescripción, la declaró con lugar y en su consecuencia ordenó el archivo y sobreseimiento de la causa.

No conforme el Pueblo de Puerto Rico, interpuso, por medio de su fiscal, el presente recurso de apelación.

La Corte de Distrito de Guayama, razonando su resolución se expresó como sigue:

"De la faz de la acusación aparece que ésta fué presentada a la Corte por el Gran Jurado el día 17 de noviembre de 1926, o sea, tres años y un mes después de perpetrado el delito. Los acusados fueron arrestados y puestos por vez primera bajo fianza, según consta de los autos de esta causa, los días 3 y 6 de julio de 1926 respectivamente. Veamos si el delito está prescrito.

❈      ❈      ❈      ❈      ❈      ❈      ❈

"Preguntamos ahora: ¿Cuándo se entiende comenzada una acción?

"En derecho civil, cuando se radica la demanda. Nuestro Código de Enjuiciamiento Civil, art. 38, así lo dispone expresamente al establecer que se da principio a una acción cuando se presenta la demanda. El Código de Enjuiciamiento Criminal no determina la manera clara y específica cuándo se da principio a una acción penal, pero sin embargo, encontramos que en el capítulo de dicho Código que trata sobre 'Alegaciones y acusaciones', artículo 67, se dispone que 'la primera alegación de parte del Pueblo o poder público, es la acusación.' Por acusación se entiende según el artículo 68 del referido Código de Enjuiciamiento Criminal, 'la alegación escrita hecha por un fiscal a un tribunal de distrito, en la cual se imputa a una persona la comisión de un delito público.' De manera, pues, que de acuerdo con los anteriores preceptos, la acción penal no se inicia o comienza ante el Tribunal hasta tanto no se ha radicado la acusación en la Secretaría de la Corte. En el caso que ahora nos ocupa, la acusación fué presentada por un Gran Jurado, pero esta circunstancia, en nuestro concepto, viene a fortalecer más aún la opinión de este Tribunal en cuanto a que la acción penal no comienza hasta tanto no se ha presentado la acusación. El Gran Jurado es un cuerpo investido por la ley con la facultad de investigar los delitos

que se cometan dentro de su distrito. ·No obstante, el arresto de una persona acusada por el Gran Jurado habrá de efectuarse por mandamiento de la Corte después de presentada la acusación por el Gran Jurado. De aquí que, en los casos de acusaciones por el Gran Jurado, como en el que se discute, la jurisprudencia sea más uni-. forme, que cuando se trata de una acusación fiscal, en sostener que la acción penal no comienza hasta tanto no se ha radicado la acusación. Veamos lo que a este respecto nos dice Corpus Juris, volumen 16, párrafo 355, página 230; de donde copiamos lo siguiente:

" 'COMMENCEMENT OF PROSECUTION.—1.—IN GENERAL.—If a statute provides that an indictment must be found within the period of limitation, a failure to find the indictment within such period bars the prosecution of the offense, and making a complaint before a magistrate and procuring a warrant for the arrest of accused, although there is a preliminary hearing and binding over, does not take the case out of the statute. On the other hand, where the statute simply provides that the prosecution must be commenced within a specified period a complaint and warrant of arrest issued thereon and executed without unnecessary delay will constitute a commencement of the prosecution. Of course under such a statute a prosecution may be by indictment, in which case it will be deemed commenced at the time the indictment is returned and presented to the court by the proper grand jury, and from that time the further running of the statute of limitation will be arrested. Similarly if the prosecution is by affidavit and information, then, and in such cases, the action may be deemed to be commenced at the time the information is filed with the clerk by the state through its proper officer.'

"En aquellos Estados donde rigen preceptos iguales o semejantes al contenido en el Art. 78 de nuestro Código Penal las cortes han reconocido y aceptado el principio de que la presentación de la acusación constituye el comienzo o iniciación de la acción. En el caso de Gardner vs. State, 161 Ind. 262; 68 N. E. 165, donde se discute ampliamente esta cuestión, la Corte Suprema de Indiana dice lo siguiente:

" ' 'Without further consideration or references to authorities bearing upon the proposition, we are of the opinion, and so conclude, that the answer to the question above propounded must be that a criminal prosecution by indictment may be deemed and considered as commenced at the time the indictment is returned and presented to the court by the proper grand jury, and from that time the further running of the statute of limitation will be arrested. If the prosecution is by affidavit and information, then and in such cases

the action may be deemed to be commenced at the time the information is filed with the clerk by the state through its proper officer.' Gardner vs. State, 68 N. E. 165.

"Véanse además los casos de Jones vs. State, 14 Ind., 346; State vs. Smith, 72 Kan., 244.

"Finalmente diremos, en apoyo de la teoría que hemos venido sosteniendo de que la acción penal no comienza, de acuerdo con el art. 78 del Código Penal de Puerto Rico hasta que se haya presentado la acusación, que es un principio reconocido por la jurisprudencia que los estatutos de limitación deberán siempre interpretarse razonablemente en favor del acusado y en contra del Pueblo. Corpus Juris, Vol. 16, párrafo 340, página 222."

Parecen en verdad convincentes las razones expuestas por el ilustrado juez de distrito. Sin embargo, un estudio detenido de la cuestión nos lleva a una conclusión contraria.

El artículo 78 del Código Penal, copiado del original inglés, dice:

"The prosecution for any felony other than murder, the embezzlement of public money, or the falsification of public records, must be commenced within three years after its commission."

Y el artículo 800 del Código Penal de California es como sigue:

"An indictment for any other felony than murder, the embezzlement of public money, or the falsification of public records, must be found, or an information filed, within three years after its commission."

Si el legislador puertorriqueño hubiera usado como el californiano las palabras "An indictment . . . . must be found" no habría cuestión. Tendrían entera razón los acusados y la corte de distrito, pero nuestra Legislatura se separó del modelo y usó las palabras "The prosecution . . . . must be commenced" y la situación varía.

Desde el año de 1905 esta corte, por medio de su Juez Asociado Sr. McLeary, en el caso de *El Pueblo* v. *Rivera et al*, 9 D.P.R. 403, 407, se expresó así:

"El distinguido abogado sostiene que dirigir un proceso significa

hacerse cargo de la causa después de haber sido presentada la acusación, y no incluye la preparación o presentación de la misma. A los efectos de este argumento parece importante determinar cuándo principia el proceso o qué es lo que constituye el principio del proceso. Se ha dicho por autoridad respetable que cuando la ley no prescribe lo contrario, el principio del proceso es el mandamiento de arresto y no la subsiguiente acusación o presentación de la misma. Consúltense los siguientes casos: *Clayton* vs. *State,* 127 *Alabama,* 550; *Leake* vs. *State,* 22 La. Ann., 550, *Carr* vs. *State,* 36 Tex. Crim. App. 390.

"En el caso de *Harnett* vs. *State,* 42 Ohio St. Rep. 568, la Corte Suprema del estado de Ohio resolvió que cuando una persona es arrestada y debidamente encarcelada por el delito de que es acusada más tarde, el proceso de ese delito está pendiente desde el momento en que esa persona está arrestada y encarcelada. Además de estas autoridades puede consultarse el Diccionario de Bouvier, tomo 2do., página 784, en donde se define la palabra proceso, como sigue: 'Los medios que se adopten para traer ante la justicia a un supuesto delincuente y castigarle siguiendo debidamente las prácticas establecidas por la ley.' Se hace referencia al caso siguiente: 34 La. Ann. 1198.

"Es evidente que el principio del proceso es el arresto o el primer paso dado por el fiscal, cualquiera que sea, a fin de traer al delincuente ante la justicia."

En el caso citado de Ohio, *Hartnett* v. *State,* 42 Ohio 568, 576, la Corte Suprema de dicho estado, dice:

"El Sr. Wharton en su tratado sobre *Enjuiciamiento y Práctica Criminal* dice en el índice: 'El proceso generalmente empieza al prestarse el juramento ante el magistrado,' y en la sección primera dice: 'La forma ordinaria en que comienza un proceso criminal es cuando se presta un juramento preliminar ante un magistrado, en virtud del cual se expide una orden de arresto contra el acusado.'

"El Sr. Bishop, en su tratado sobre *Enjuiciamiento Criminal,* dice en el párrafo 28, 'Este capítulo os presentará, en una corta reseña, los pasos consecutivos que hay que dar en un proceso criminal.' Luego en la sección 29 divide estos pasos en la siguiente forma: 'I.—Los pasos anteriores a la acusación o denuncia; II.—Los que hay que dar hasta que se dicta sentencia después de oída la prueba; III.—Desde que se declara al acusado culpable hasta que se cumple enteramente la sentencia.' 'Párrafo 30. Para sentenciar y castigar

a un acusado debe estarse en posesión de su persona. Por tanto, generalmente, cuando se ha cometido un delito y las sospechas recaen sobre determinada persona, lo primero que debe hacerse es arrestarlo.'

"El *primer* paso, la orden de arresto, *el encarcelamiento*, la declaración fundada del cargo por el gran jurado, que se convierte en la acusación, la lectura de ésta, la alegación del acusado, el juicio, el veredicto, la sentencia y su ejecución son considerados como pasos consecutivos posteriores en un proceso criminal.

"Entonces, desde el momento en que se expide la orden de arresto y se encarcela al acusado por un delito del cual se le acusa más tarde, la causa está *pendiente.*" Harnett vs. State, 42 Ohio State Reports. 568, 576.

Y en otro de los casos citados, el de *State* v. *Williams*, 34 La. Ann. 1198, 1199, la Corte Suprema, expresa:

"La defensa alega que el significado dado a la palabra 'proceso' (Prosecution) en la Constitución, está indicado por el Art. 5 que dispone que 'las acciones penales se entablarán mediante denuncia o acusación,' etc. y concluye alegando que antes de presentarse la denuncia o acusación no se puede instituir un procedimiento con el fin de investigarlo parcialmente.

"Creemos que ésta es una definición demasiado limitada de la palabra 'proceso', palabra que se define como 'medios adoptados para enjuiciar y castigar a un supuesto infractor mediante el debido procedimiento de ley.' Bouvier p. 396.

"De acuerdo con nuestro sistema de derecho penal, un proceso tiene distintas fases o pasos: el primero es generalmente la declaración jurada o querella; le sigue la orden de arresto, y los demás pasos que tiene que dar el juez instructor, quien después pasa la causa a la corte criminal correspondiente, donde el proceso sufre las siguientes etapas, o sea la presentación de la acusación al gran jurado, la lectura de la misma, el juicio y la convicción o absolución del acusado.

"Por consiguiente, el Art. 5 de la Constitución al referirse a 'procesos' contiene una disposición relativa a la manera o forma de presentar la acusación; y al hablar de todos los procesos instituídos, 'en el Art. 130 de la Constitución' se quiso decir todas las causas criminales que puedan entablarse ante una corte."

Otro caso interesante es el de *State* v. *Simpson*, 76 N.

E. 544. En él la Corte Suprema de Indiana, razona del siguiente modo:

"Se insiste primeramente en que la declaración jurada y la acusación demuestran que el proceso por el delito imputado ha prescrito. El estatuto aplicable al caso lee .como sigue: 'En todos los demás casos los procesos por un delito deben entablarse dentro de dos años. de su comisión.' Artículo 1665, Burns' Ann. St. 1901. En la obra Bishop sobre Delitos Estatutorios, párrafo 261, este eminente autor, después de discutir la materia, dice: 'Se cree que es opinión general de nuestros tribunales que un proceso criminal se comienza cuando se presenta la denuncia a un magistrado y éste expide la orden de arresto.' Esta conclusión está sostenida ampliamente por una colección copiosísima de casos ya resueltos. En el caso de State vs. Miller, 11 Humph. 505, al interpretar un estatuto similar al nuestro, se dijo: 'La corte de circuito, refiriéndose al momento en que se halló que la denuncia era el principio del proceso, dentro del significado de la ley, ordenó el archivo y sobreseimiento de la denuncia, sentencia de la cual el Procurador General, a nombre del estado, elevó un recurso de error a esta corte. Somos de opinión que el juez de circuito cometió error al interpretar el estatuto. Cuando éste dispone que "la acción penal por cualquier *misdemeanor* deberá entablarse dentro de doce meses," entendemos que la legislatura se refiere al principio del proceso y no al momento en que se declara fundada la acusación. La expedición de la orden y el arresto del acusado y exigirle fianza para que comparezca ante la corte de circuito, ciertamente que equivale a procesar al infractor y de este proceso la expedición de la orden de arresto es el principio. La denuncia es la forma mediante la cual surge la controversia por que se juzga al acusado. Por tanto, es un proceso seguido por virtud de denuncia, a pesar de que el proceso se comienza mediante la orden de arresto.. Lo que esto significa es que las acciones penales. por delitos de *misdemeanor*, que deban comenzarse mediante denuncia o acusación, deberán entablarse dentro de doce meses. El límite de tiempo se refiere al comienzo del proceso y no al momento en que se declara la acusación fundada.' En el caso de State vs. Erving, 19 Wash. 435, 53 Pac. 717, sobre esta misma cuestión, la corte dijo: 'Pero los abogados de la defensa están equivocados al asumir que este caso no fué entablado dentro de los tres años de la supuesta comisión del delito, o sea, julio 11, 1894. De los autos y de los alegatos de la defensa se desprende suficientemente que el acusado fué arrestado el 22 de junio de 1897 y que por este mismo delito se le hizo ante un

juez de paz una investigación preliminar.  Que como resultado de esa investigación se le detuvo para que compareciera a juicio ante una corte superior y eso equivalió al comienzo del proceso dentro del significado del estatuto.'  En el caso de State vs. Howard, 15 Rich. Law, 274, 282, la Corte de Apelaciones de Carolina del Sur dijo: 'La denuncia presentada a un magistrado equivale al comienzo del proceso o interrumpe la prescripción'—citando los casos de State vs. Fraser, 2 Bay, 96; State vs. James, 2 Bay, 215; y State vs. May, 1 Brev. 160.  En el caso de Ross vs. State, 55 Ala. 177, se resolvió que la corte instruyó correctamente al jurado al decirle que en un caso por el delito de hurto menor si la orden de arresto contra el acusado fué expedida y diligenciada por un funcionario autorizado, dentro de los doce meses de la comisión del delito, entonces el estatuto que prescribía que tales acciones debían entablarse dentro de doce meses de su comisión, no era un impedimento.  Véanse también los casos de Molett vs. State, 33 Ala. 408, 412; Commonwealth vs. Christian, 7 Grat. 631; Newell vs. State, 2 Conn. 38; y Rex vs. Willace, 1 East C. L. 186.  Las cortes de última instancia de los Estados de Nebraska, California, Missouri y Florida han emitido opiniones que aparentemente están en conflicto con el resultado a que se ha llegado en los casos antes citados.  Sin embargo, la diferencia es fácilmente explicable haciéndose un examen del contexto de la ley de prescripción de dichos estados.''  *State* vs. *Simpson,* 76 N. E. 544, 545.

En igual sentido se expresa la Corte Suprema de Kansas en el caso de *State* v. *White,* 92 Pac. Rep. 830.

Los casos de *Gardner* v. *State* 161 Ind. 262 y *State* v. *Smith* 72 Kan. 244, no tienen la fuerza que les da la corte de distrito.

Citaremos en extenso el segundo caso que se basa en el primero, y que tomamos de 83 Pac. 832.  Es así:

''Simón Smith apela de una sentencia condenándolo en virtud de una acusación por haber violado la Ley de Prohibición.  El único motivo por el cual se solicita la revocación es que la corte permitió que los testigos declararan con respecto a ventas de licor efectuadas dentro de un período de dos años con anterioridad a la fecha en que se halló fundada la acusación.  Hubo un intervalo de tres días entre la fecha en que se halló fundada la acusación y el momento en que se expidió la orden de arresto.  El acusado alega que el proce-

dimiento en su contra no empezó, para impedir los efectos de la prescripción, hasta que se expidió la orden de arresto; que por lo tanto, no se le podía perseguir por un delito cometido más de dos años con anterioridad a esa fecha; y que por consiguiente la prueba debió haberse limitado a un período que empezó a transcurrir dos años antes de la expedición de la orden de arresto, en vez de dos años antes de hallarse fundada la acusación. Se basa en los casos de In re Griffith, 35 Kan. 377, 11 Pac. 174, e In re Clyne, 52 Kan. 441, 35 Pac. 23, los cuales resuelven que cuando se radica ante un magistrado una acusación imputando un delito grave, no se considera que el proceso empieza sino hasta que se expide la orden de arresto, y ni aún entonces, a menos que se ejerza una diligencia razonable al diligenciarla. En el caso de Griffith se dice: 'La querella es el paso inicial que determina si se va a empezar o no un proceso, y la orden de arresto necesariamente no sigue a la formulación y radicación de la querella, como sucede cuando se radica una acusación.'

''Un procedimiento instituído por medio de una acusación, según se ha sugerido, tiene un fundamento distinto. El estatuto (artículo 5568, Gen. St. 1901) dispone que, a menos que la corte dicte una orden especial, el secretario debe expedir una orden de arresto dentro de los veinte días de haberse dado fin al término. Por tanto, el mero hecho de que se halle fundada una acusación le impone el deber absoluto al secretario de expedir una orden de arresto dentro de un tiempo determinado. Hace que empiece a funcionar la maquinaria por medio de la cual, sin ulterior intervención del querellante, se instituye el proceso, dentro de un término que ha de considerarse como razonable, para el arresto del acusado. Cuando se demuestra que se ha ejercido debida diligencia, se considera que una acción criminal instituída por medio de querella ante un juez de paz imputando un delito grave ha comenzado al expedirse la orden de arresto, no importa cuán largo sea el intervalo que transcurra antes de diligenciarse la misma. In re Clyne, supra. Por clara analogía, resolvemos que cuando se trata de un proceso por medio de acusación, en que se le ha entregado al alguacil (sheriff) la orden de arresto dentro del término estatutorio mencionado, la misma surte efecto por relación como si hubiese sido expedida inmediatamente al recibirse el informe del gran jurado; y se suspenden los efectos de la prescripción desde entonces. La cuestión sobre cuándo es que ha de considerarse iniciada una acción criminal ha recibido frecuentemente la atención de las cortes. En 19 A. & E. Encycl. of L. 166 se han recopilado algunos casos sobre la materia. Estos casos

tienen poca o ninguna relación con la cuestión aquí envuelta, porque estaban afectados por diferencias de estatutos, y surgieron bajo circunstancias distintas—usualmente cuando el arresto había precedido a la acción del gran jurado. Sin embargo, en el caso de Gardner vs. State, 161 Ind. 262, 68 N. E. 163, se presentó la cuestión aquí envuelta bajo un estatuto substancialmente igual al de Kansas, y la Corte, después de revisar extensamente las autoridades, resolvió que se empezó el proceso y se interrumpió la prescripción desde el momento en que se halló fundada la acusación, independientemente de la fecha en que se expidió la orden de arresto, sosteniendo expresamente un criterio distinto sobre este punto el caso de Flick vs. State, 22 Ind. App. 550, 51 N. E. 951.'' *State* vs. *Smith*, 83 Pac. Rep. 832.

Como puede verse la fecha de la presentación de la acusación precedía a la del mandamiento de arresto y se sostuvo entonces que el proceso había comenzado al presentarse la acusación.

En Puerto Rico una vez que se presenta una denuncia al Fiscal éste procede a la investigación del caso actuando como un magistrado investigador y si encuentra motivos suficientes para ello decreta el arresto del acusado y es en verdad desde ese momento que la maquinaria de la Justicia se mueve contra determinada persona y, parece lógico que, dados los términos del estatuto, sea ese el momento básico para computar la prescripción. Si el arresto no se hubiere decretado, entonces sería la presentación de la acusación la que debería tomarse en cuenta. Parece conveniente hacer referencia al artículo 5 del Código Penal.

Siendo esto así, habiéndose arrestado a los acusados en los días 3 y 6 de julio de 1926, una simple operación aritmética demuestra que no había transcurrido entonces el término de tres años que fija el estatuto y por tanto que la acción que tiene El Pueblo para perseguirlos no ha prescrito.

Por virtud de todo lo expuesto *debe revocarse la resolución apelada y devolverse* el caso a la corte de su origen

para ulteriores procedimientos de conformidad con los principios establecidos en esta opinión.